REQUESTED BY: Senator Elroy M. Hefner Nebraska State Legislature State Capitol Lincoln, Nebraska 68509
Dear Senator Hefner:
This is in reply to your inquiry concerning machine and computer video games when used by a city in Nebraska to conduct a lottery. We assume from your questions that the lottery has been duly established by approval of the voters as required by Neb.Rev.Stat. § 28-1116 (Reissue 1979).
We will set forth your questions, followed by our answers in the order contained in your letter.
1. Does the definition of lotteries in section28-1101(6) include a machine or computer operated video lottery which issues a ticket to be redeemed for a prize? Does it include a machine or computer operated video lottery which directly returns cash as a prize?
In CONtact, Inc. v. State, 212 Neb. 584,324 N.W.2d 804 (1982), the latest lottery case before the Supreme Court of Nebraska, the court, in discussing the above statutory definition, quoted with approval from a Texas case as follows:
 In the case of Callison v. State, (Tex.Civ.App.), 146 S.W.2d 468, the Court uses this language: `Obviously, the punch boards are lotteries; purely games of chance or luck. The numbers are hidden from view until punched from the board by players. No skill is exercised in the operation of the game, and the boards can be used for no purpose other than gaming; they were designed for that purpose only.' It is clear that all the elements of a lottery are present in the case at bar. Those who participated in the operation of the punch board paid for the right to share in the distribution of a prize, and the result of their venture depended entirely upon chance. No skill was required of any person who punched a number from the board, and the prize consisted of money. The punch board described in the evidence is a lottery, and this Court so holds.
The Supreme Court of Nebraska went on to hold that pickle cards came within the definition of a lottery and when properly operated by a nonprofit corporation, were legal.
Neb.Rev.Stat. § 28-1115 (Reissue 1979), which regulates `Any nonprofit organization etc.' requires the issuance of a ticket with a sequential number and the name of the organization printed thereon. Neb.Rev.Stat. § 28-1116 (Reissue 1979), which authorizes counties, cities, and villages to conduct lotteries, has no such requirement. Neither, in our opinion, do cities, counties, and villages come within the purview of § 28-1115.
We are of the opinion that, if presented with the question, the Supreme Court of Nebraska would look at the construction and operation of the machine in making its determination. The mere fact that it is a machine would not disqualify it as a lottery, but the provisions of § 28-1107
prohibiting possession of a gambling device would be applicable as well as the definitional provision contained in 28-1101(5):
 Gambling device shall mean any device, machine, paraphernalia, writing, paper, instrument, article, or equipment that is used or usable for engaging in gambling, whether that activity consists of gambling between persons or gambling by a person involving the playing of a machine.
In light of these two sections of the statutes, we believe that it would be difficult to design a machine or computer operated video device which would fall within the definition of lotteries contained in the Nebraska statutes.
We believe that it is likely that any machine when operated by a governmental subdivision which paid off in cash at the time of playing the machine would likely be found to be a gambling device.
2. Does section 28-1115 (as is presently stands, not as amended by LB 259) require all lotteries operated for community betterment purposes to comply with the 65% and 25% provisions of the section? If yes, does a lottery described in question 1. comply specifically with the 25% on expenses?
The answer is `no' as to lotteries operated by cities, villages, and counties as discussed under question 1.
3. What are the answers to the above questions when LB 259 take effect: (The 25% provision becomes the 10% provision in section 41 of LB 259.)
Section 41 of LB 259 specifically applies to § 28-1116, discussed above, which is the section which authorizes city, county, and village lotteries. This new section will require city, county, and village lotteries to follow similar requirements to those now required of nonprofit organizations under § 28-1115 (Reissue 1979), including a limitation on the use of the proceeds and the requirement that a ticket be issued with a sequential number and the name of the county, city or village conducting the lottery printed thereon. Operators of machines which do not have such a ticket or follow the percentage requirements as to the proceeds will be in violation of this section which becomes effective August 26, 1983.
4. Does a video lottery violate any provisions of the Nebraska Constitution?
There is no reason why a video machine could not be devised which would not violate the provisions of the Nebraska Constitution but, since we have not been apprised of the operation of any particular machine, we cannot give you a blanket answer.
Very truly yours, PAUL L. DOUGLAS Attorney General Patrick T. O'Brien Assistant Attorney General